Case number 22-5749, USA v. Kent Booher. Argument not to exceed 15 minutes per side. Ms. Coleman, you may proceed for the appellate. Thank you and may it please the court. My name is Amy Lee Copeland. I'm counsel for Kent Booher. I've reserved today five minutes for rebuttal in Mr. Booher's appeal. In this case, the district court committed error that was plain when it used a jury instruction that instructed the jury on 2015 terms for conduct that occurred in 2012 and 2013. This was error that made a difference because the only way that this jury convicted Mr. Booher was based on the 2015 terms. Thus, the erroneous jury instruction expanded the basis of Mr. Booher's criminal liability. This was error, too, that should be corrected to maintain public confidence in the judicial system. My colleague, in her brief, has allowed that the government was the genesis of this mistake by entering a mistaken superseding indictment from which this erroneous instruction almost certainly came. First, there was error that was plain. This was an ex post facto violation. This was a 2015 statute whose terms were applied to 2012 and 2013 conduct. The government doesn't concede that there was error and that it was plain. Instead, it says, kind of clumping together the first three prongs of the plain error analysis, that entice simply means to solicit or to patronize, which are the two new terms in the 2015 statute. It doesn't. The government's brief does define entice, but it doesn't define solicit or patronize. When you actually look at those definitions, you see that solicit and patronize are transactional words. Entice simply means to lure, to bring in with a promise of hope, to do things like that. But patronize and solicit mean a financial transaction. I want to talk about where in the evidence. Let me step back. I'm trying to understand the extent of the ex post facto argument because my understanding is that those ex post facto violations occur when there is punishment of an act that was in violation of no existing law when it was committed. That's Collins v. Youngblood, Supreme Court in 1990. Here, what we have is a situation that it was never legal for Mr. Boer to patronize or solicit sex from a minor. How does that relate to the claim of ex post facto? Does that govern it, or is there a reason that breaking other laws does not impact this case? In 2012 and 2013, it was illegal for Mr. Boer to entice. Congress had not prohibited at that time the patronization or the solicitation of a minor. The ex post facto clause applies here because it did expand the basis of liability. I'm just trying to understand the narrowness of it. For that act under the crime that was charged. That is correct. It does not matter to your analysis that the actions that he engaged in soliciting, for example, was already illegal under other laws. Does that have any role? I'm sorry for interrupting. We look simply to this statute. As the judge instructs the jury, every count is considered independently. In this case, there was an enticing charge, 2422, that uses enticing in terms of persuading and coercing. Those still have to be considered independently. Even if there were other ways to criminalize Mr. Boer's conduct for patronizing and soliciting in 2012 and 2013, this statute didn't cover those means at that time, which is why it was an error for the judge to give this jury instruction. Is it your position then that, I hear you saying that there has to be a transaction. It strikes me that a transaction would be something that would be more involved than enticing. If you're paying someone for something, isn't the payment itself the enticement for them to do the act that you're paying for? Your Honor, I want to talk about what the evidence in this case is. But I want to talk about the definitions. You talked about the definitions. Why wouldn't enticement be subsumed within soliciting and patronizing? I guess that's a more direct way to ask the question. Thank you, Your Honor. Enticing simply means, by the government's own definition, the plain meaning is to lure, induce, wrongfully solicit, attract by arousing hope or desire, to allure or attract by offer of pleasure or advantage. It says nothing about money in that definition. So money is not advantage? Money is not advantage in this case because it is patronizing or soliciting that are the terms here. We look at how the government itself described the conduct in this case at page 13, footnote 2 of its brief. It said, and I want to read this, Judge, because I want to get it right. Even if the victim may have initiated sexual encounters with Mr. Boor, she was enticed into doing so by her perceived need for money and pills, and by offering or agreeing to pay her for sex, Boor was the one who enticed her. Of course, the statute requires that he knowingly entice her to do this. But here we have a victim who the government acknowledged initiated sexual encounters with my client. I'm not trying to normalize this behavior. I am not trying to blame her, Judge. The record, however, shows that the victim testified that she had to have sex to get money from Mr. Boor and that the relationship with Mr. Boor began when she needed money for pills and she called a woman named Melina Aiken. Aiken said, I know someone who can help. That's at record 114, pages 20 to 28, and page 34. The victim's mother testified, too, at record 113, pages 118, 125 to 26, that Boor said that Ms. Aiken set him up with this victim for a weekend for $1,400. This is patronization and this is solicitation in its purest form. That is what this statute is designed for. It's also enticing, isn't it? Your Honor, it is a financial transaction. The plain meaning of enticing doesn't encompass a financial transaction. This is patronization and solicitation. Okay. Maybe more specifically it contemplates it, but are you saying that when you give a minor money for sex, that it's not enticing them? It has to be candy? I appreciate the reference to candies from strangers, Your Honor. In this particular statute, there's two elements. There has to be the enticing, and in this case it was charged as patronizing, soliciting, and a commercial sex act. The purpose of this statute was to prohibit the commercial sex act. The legislative history cited in the briefs goes to whether it extended to both the pimps and the johns, and the analysis fell on the side of the johns. When you look at the legislative history, it talks about how it may not have always been clear that this was the transaction that was prohibited, the consumer side of the transaction, if you will. And that is exactly why the statutory language was changed. It was changed in direct response to the word obtain. And so this was added to clarify what Congress thought was imprecise language about exactly to whom this statute applied. That's why it's here. And Mr. Brewer, that's what he did. He patronized and solicited this young woman when he paid her for sex. No matter how we got to that point, that was his role in this particular case. It wasn't enticing. I think about it, too, in terms of plain language. I can entice my friend, Pam, to take a walk with me on a nice Saturday afternoon, but if I offered to patronize or solicit her, we would no longer be friends. And so we have here a situation where Mr. Brewer's conduct was the patronization and the solicitation because of the payment of money. Your argument is not that we don't know what the jury would have been deciding on. Your argument is that they didn't prove enticing. Your Honor, we don't know how the jury decided because there was no special verdict. I think the closest we can come to what the government's theory of the case is looking to what it argued. In its opening statement, let's be really clear about one thing. This is at page ID 2055. The victim did not give in to Brewer's advances because she felt affection for him. No, her reason was simple. She was addicted to prescription pain pills, and if you're an addict, withdrawal is terrible. She needed the pills, so in exchange for sex, Brewer gave her pills or money to buy the pills. He gave her an iPhone. Why didn't he entice her with money and gifts? Your Honor, because if entice simply means to lure with affection or with arousing hope or desire, that isn't money. Let's assume that we agree that it was a clear error. The government obviously concedes they made a mistake. Let's say the error was clear. Tell me how it affected his substantial rights in light of the evidence that was in the case. Your Honor, a flawed instruction here has led to a flawed conviction on this particular account. I'll let you make that argument, but we've got four things you have to show. That it was error, clear or obvious, affected substantial rights, and seriously affected the fairness, integrity, or public reputation of judicial proceedings. That's the United States Supreme Court I want to know. How do you meet number three? It allowed the jury to convict him based on two means that were simply not present in the statute, and that is improper. This affected his substantial rights because he was convicted under a statute where he did not meet the means of commission. I think my real struggle is understanding the substantial rights and the impact of the case in the end because we have really Jones, the Ninth Circuit case, an unpublished decision. Is there any other law that you would like to point out to us that would make this same result? Your Honor, there is no other case that I can point out to you as I'm standing here. Just as an officer of the court, I know we look at the conviction. I'll tell you that count three was grouped just in terms of the sentencing principle with some of the other counts that was used to enhance by one level in the grouping rules, I should say. That took Mr. Boor's offense level up to 44. That, of course, is above the guidelines range, so even if that was erroneous, even if this goes out, he'd likely still be facing offense level 43, which is a life guideline recommendation. I think that's partially an answer to your question, but as we all know, Judge, the guidelines range is only one of the things that the judge considers in sentencing, so this may have had some follow-on sentencing issues. Thank you, Your Honor. May it please the court, Deborah Brenneman for the United States. The substantial rights prong of the plein air standard requires proof that if the jury had been given the right instruction, the defendant would have been acquitted. Or a different outcome. Or a different outcome, but the phrasing that the Supreme Court just recently used in the Greer decision, for example, post-Ray Haif, they used that phrase, and I quote, if the jury had been given the proper instruction, the defendant would have been acquitted. That's how a defendant shows a different outcome at a trial. We readily acknowledge the words patronize and solicit were not part of 1591 when Mr. Brewer committed his offenses against the minor known as K.B., but we see no reasonable probability that he would have been acquitted had the court not included those words. That's because experts— I'm sorry to interrupt, but do you— it sounds like perhaps the government is conceding that this error was a clear error since those words were not in the statute. Is that fair to say? This court could reach that conclusion. An ex post facto violation only occurs if it is changing the legal consequences of actions. And in our view, all of the conduct that the jury heard would have easily satisfied enticement, which was part of the statute at the time of his offense conduct. What about the argument that they cannot include incorrect words in a charge because we don't know which word they relied on when they decided that he was guilty? We look at the totality of the evidence of what's happening. The court consistently applies either a harmless error test or a plain error test, as in this case, in which the substantial rights prong is the same under both standards. It just depends who has the burden of proof. And so— And here the defendant. Here the defendant has the burden of proof. And even now, we don't believe he's identified any conduct that would constitute patronizing or soliciting, but not enticing. Booher gave Cavey money. He gave her multiple cell phones. He paid for her cell service. He gave her an iPad. He gave her jewelry, a promise ring. He paid for drugs to support her addiction. He paid for food. He paid for tanning services. He told her that he loved her and could guarantee her happiness, which, combined that with the promise ring and all the other gifts, led her to believe that they were part of a long-term relationship. She was vulnerable to his attentions, aside from the fact that she was a minor. She had a difficult family situation. And all of these kinds of things taken together would count as enticement. This court often defines enticement in the context of other statutes, like 2422B. That's a context in which this court has had more opportunity to define enticement. But any act that encourages a minor to engage in sexual activity could constitute enticement. Sometimes that might be financial, and then it would also count as patronizing or soliciting. But we don't think there's any exclusion from the definition of enticement for things that involve money, for example. Also, the verbs in 1591 don't distinguish between willing or unwilling victims. Congress has done that in various other statutes, but not in 1591. So it equally protects minors who do not initially want to engage in sex and those who do. Any acts that would encourage this victim, allure, entice, induce, to participate or agree to sexual activity constitute enticement. Someone could be enticed to take an action, even if they're neutral or predisposed to do it already. Think about the shopper who walks into the grocery store and buys a particular product because it's on sale. They've been enticed to do so by the sale sign, even though they were already in the store looking for precisely that type of product. The sale, the financial incentive, this is the thing that entices them. Coercion, of course, an entirely different term, does not appear in 1591. That is one that has the connotation of overcoming a victim's will. That's part of the reason for the footnote that says it doesn't really matter whose idea it was because 1591 doesn't draw that distinction between a willing or an initially unwilling victim. Either way, it counts as enticement. I'd like to talk for a minute about how this case is different from Jones. The changes in 1591 at that time created not only a reasonable probability but a very strong one that Jones had been convicted of conduct that was not illegal at the time he committed it. To the extent the court is inclined to do so, the records are all available from the underlying case. I know that the opinion itself is relatively short, but I've pulled the documents from the district court record, and Jones had been charged based on his actions in September 2008. But the language in the indictment and the language in the jury instruction included language from the December 2008 amendment. That amendment was different, the amendment at issue here, because it expanded the mens rea standard. It introduced a reckless disregard alternative to what the defendant's knowledge about the victim's age. If a defendant had a reasonable opportunity to observe a victim, the government was not required to prove that the defendant knew that the victim was under 18. And that proved to be the dispositive issue at Jones' trial. He admitted he was pimping prostitutes, he admitted that he met a girl, turns out she was 14, he claimed in his own testimony at trial that he thought she was 19. The government argued reasonable probability, he had a reasonable opportunity to observe her and make this assessment. But that was not the law at the time of his offense conduct in September 2008. So this was a very different kind of a change, in that the kind of conduct that had been charged, and which the jury undoubtedly relied upon, because there was no proof of the defendant's actual knowledge of her age, so they had to have relied upon this kind of reckless disregard or reasonable opportunity to observe her, which was not part of the statute at the time. Here, however, all of the conduct that Mr. Boer committed was criminalized by this statute under the word entice. And he hasn't identified any conduct that would fall outside of that definition, and for that reason he hasn't satisfied his standard. We ask this court to affirm, and obviously I'll take any other questions the court has. Thank you very much. Just briefly, Your Honor. My colleague outlined the ways that my client made this young woman think that they had a real relationship. There was a promise ring, a promise of marriage, the professions of love. She describes all of this as enticement. But 1591 also requires a commercial sex act, and when we go to the commercial sex act prong of it, the victim's unequivocal testimony was that she would only have sex for money. That takes it into the patronizing and soliciting range. Mr. Boer had to do that. But counsel, I mean, let's say the jury had been given the right instruction with only the word entice. Do you think they would have bought a defense that said, well, entice doesn't include money? That's a different crime? Your Honor, we don't know what a properly charged jury would have done. There wasn't a special verdict here. But the enticement would not have counted, because, again, that was the whole purpose of the 2015 amendment, was to clarify. Clarify. Yeah. Clarifying is different from adding something new. But other courts have determined it. There are two district courts, two district judges in South Dakota, which are what prompted this legislative history change, that determined that the statute didn't apply to Johns at all, that it was just a pimp-side statute. But they got overturned by the Eighth Circuit, right? They did, Your Honor. And they also got overturned by Congress because of this confusion. I think that's the exact word in the legislative history. And that confusion is the concern that I have, that we don't have any assurance that the jury relied on the only word that it could have used to convict Mr. Brewer, which was entice. So I'm back to the beginning question. How did that jury burden to show that that affected his substantial rights? How on this record did that affect his substantial rights? In other words, you have to show a different outcome. Your Honor, the Eleventh Circuit, my home circuit, describes it as an error that makes a difference. And it made a difference here because it expanded the basis of criminal liability for my client. There are other statutes that criminalize sleeping with or having sexual relations with a minor. My client was convicted on those statutes. He was convicted of 2422, for instance, which does involve enticing, but in a different context of persuading and coercing. There it was simply satisfied with text messages. Is that penalty lower? That is the one question I can't answer today, Judge. I apologize. But here, Your Honor, the enticement is not a fit for my client's conduct because it was clearly a prostitution agreement, an illicit one, with a young woman he had absolutely no legal right ever to sleep with. I acknowledge that, Your Honor. But this is the reason we really need to hone in on what was the basis of my client's conviction and how should he have been tried. He is entitled to his procedural rights, and here the jury should have been properly charged. Thank you. We see also that you are serving under the Criminal Justice Act and providing your time. Again, I would say how much the court appreciates that. It makes a difference in our work. It enables us to work with both sides with good argument and good briefing, and we thank you for your willingness to give your time to do that. Thank you. That is our last argument case for today. The other cases are on briefs, so you may adjourn. This honorable court is now adjourned.